T.C. Summary Opinion 2011-129

UNITED STATES TAX COURT

TIMOTHY JOHN KARLEN AND JENNIFER KARLEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22614-10S.          Filed November 10, 2011.

Timothy John Karlen and Jennifer Karlen, pro sese.

Christina L. Cook, for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $1,318 in petitioners' Federal income tax for 2008. After a concession by petitioners,[2] the issues for decision are as follows:

(1) Whether distributions from petitioners' section 529 plan accounts are includable in gross income; and if so,

(2) whether petitioners are liable for a 10-percent additional tax under section 529(c)(6) regarding distributions not used for educational expenses.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioners resided in the State of Minnesota when the petition was filed. All references to petitioner in the singular are to petitioner Timothy John Karlen.

In 2008, petitioners maintained an investment account with the North Carolina 529 Plan (NC 529 Plan) for each of their three children. The NC 529 Plan is a qualified tuition program (QTP) as defined by section 529(b) and is administered by the College Foundation of North Carolina.

---

[2] Petitioners concede that they received a taxable refund of overpaid mortgage interest in the amount of $47 in 2008.

Petitioner works as a recruiter with his salary based entirely on commissions. Beginning in 2008, petitioner started to experience financial difficulty when his income decreased because of the downturn in the national economy.

On September 4, 2008, petitioner requested distributions of $3,500 from each of his children's investment accounts in order to obtain additional cash to pay household and other living expenses. On the application forms, petitioner selected "Non-Qualified Withdrawal" rather than "Withdrawal for Rollover" as his reason for requesting the distributions. The NC 529 Plan issued the distributions to petitioner, mailing three checks, each dated September 9, 2008.

After receiving all three checks, petitioner decided to confer with his wife regarding the distributions. She disagreed with petitioner's decision to withdraw the funds from their children's investment accounts. In light of this disagreement, petitioner changed his mind and informed the NC 529 Plan that he no longer wished to take the requested distributions. A representative for the NC 529 Plan informed petitioner that because no error had been made by the NC 529 Plan in processing his applications for distributions, the transactions could not be voided. The representative instructed petitioner to endorse the three checks and return them if he wished to redeposit the amounts. Petitioner did so immediately, enclosing with the

checks a note requesting that the NC 529 Plan redeposit the distributions.

On September 19, 2008, the NC 529 Plan received the three checks and redeposited each one as a new, current-day contribution into the same account from which it had been withdrawn. Thereafter, petitioner received a Form 1099-Q, Payments From Qualified Education Programs (Under Sections 529 and 530), from the NC 529 Plan for each of the three distributions that he had received.

### Discussion[3]

A. Distributions and Rollovers Under Section 529

Generally, distributions from a section 529 QTP are includable in the distributee's gross income in the year of distribution and are taxed under the provisions of section 72 dealing with annuity payments. Sec. 529(c)(3)(A). Any portion of a distribution, however, that is rolled over under section 529(c)(3)(C)(i) is excluded from the general rule on inclusion. To constitute a valid rollover, a distribution must be transferred within 60 days either to a different QTP for the benefit of the original beneficiary or transferred to the credit

---

[3] We decide the issues in this case without regard to the burden of proof or the burden of production. See sec. 7491(a), (c); Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995.

of a different beneficiary who is a member of the original beneficiary's family.  Sec. 529(c)(3)(C)(i).

Petitioner does not deny that he requested the three distributions or that he received a check for each distribution in the mail.  Nevertheless, petitioner asserts that because he did not cash or deposit the checks with his bank, he never received the distributions.  Petitioner's assertion, however, is misplaced.  For taxpayers who use the cash receipts and disbursements method of accounting, such as petitioners, an item is includable in gross income in the year in which the item is actually or constructively received.  Sec. 451(a); sec. 1.451-1(a), Income Tax Regs.  Under the doctrine of constructive receipt, a check generally constitutes income when received, even though not cashed or deposited.  See Walter v. United States, 148 F.3d 1027, 1029-1030 (8th Cir. 1998); Kahler v. Commissioner, 18 T.C. 31, 34-35 (1952).  Accordingly, petitioners received the funds even though they did not cash or deposit the distribution checks.

Petitioner also asserts that the distributions were rolled over and were therefore not taxable.  In this regard, petitioner points out that after speaking with his wife, he decided that he no longer wanted to retain the funds from his children's accounts and that all three checks were returned to the NC 529 Plan with instructions to redeposit them.  Petitioner candidly admits,

however, that he requested the distributions because he needed cash to pay household expenses and that he never contemplated any rollover of the distributions.  Indeed, on petitioner's request forms he selected "Non-Qualified Withdrawal" rather than "Withdrawal for Rollover" as his reason for taking the distributions.

Taxpayers are "bound by the consequences of * * * [their] transaction as structured, even if hindsight reveals a more favorable tax treatment."  Estate of Bean v. Commissioner, 268 F.3d 553, 557 (8th Cir. 2001) (citing Grojean v. Commissioner, 248 F.3d 572, 576 (7th Cir. 2001)), affg. T.C. Memo. 2000-355. Although we may be sympathetic to the circumstances surrounding petitioner's decision to request the distributions, we may not restructure the transaction as a rollover simply to produce a favorable result to petitioners.  Because no distribution was transferred either to a different QTP for the benefit of the original beneficiary or to the credit of a different beneficiary who is a member of the original beneficiary's family, there was no rollover under section 529(c)(3)(C)(i).

In view of the foregoing, we hold that the distributions in issue are includable in petitioners' gross income.[4]

---

[4]  We note that the redeposited distributions will increase the basis in each account.

B.  Additional Tax Under Section 529(c)(6)

Taxpayers who receive distributions from a QTP may be subject to an additional tax applied in the same manner as the additional tax on distributions from Coverdell education savings accounts.  Secs. 529(c)(6), 530(d)(4).  Under section 530(d)(4), entitled "Additional Tax For Distributions Not Used For Educational Expenses", a 10-percent additional tax is imposed on an includable distribution that was not used for educational expenses.  Sec. 530(d)(4)(A).  Petitioner, however, never "used" the distributions at all.  Instead, when petitioner received the distribution checks in the mail he immediately returned them for redeposit into his childrens' education investment accounts.

Congress granted tax-exempt status to education investment accounts "To encourage families and students to save for future education expenses".  S. Rept. 105-33, at 16 (1997), 1997-4 C.B. (Vol. 2) 1067, 1096; H. Rept. 105-148, at 323 (1997), 1997-4 C.B. (Vol. 1) 319, 645.  To impose a 10-percent additional tax upon petitioners given the unique facts in this case "would be like throwing salt into a wound."  Larotonda v. Commissioner, 89 T.C. 287, 292 (1987).  Although the distributions received are includable in petitioners' gross income, "doubt exists in our mind as to whether the * * * [additional tax] was designed to cover the situation involved herein."  Id.  We are mindful that "A particular construction must not produce inequality and

injustice if another and more reasonable interpretation is possible." Grier v. Kennan, 64 F.2d 605, 607 (8th Cir. 1933) (citing Knowlton v. Moore, 178 U.S. 41 (1900)). Because petitioners never used the distributions and instead immediately returned the distribution checks to the NC 529 Plan to save for their childrens' future educational expenses, "we think it judicious to resolve this issue in favor of" petitioners given their unique situation. See Larotonda v. Commissioner, supra at 292. Consequently, we hold that the 10-percent additional tax does not apply.[5]

## Conclusion

We have considered all of the arguments made by the parties and, to the extent that we have not specifically addressed those arguments, we conclude that they are without merit.

To reflect the foregoing,

> Decision will be entered for respondent in the amount of the determined deficiency less the additional tax.

---

[5] We also note that "'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence, and it will always be presumed that the legislature intended exceptions to its language, which would avoid results of this character.'" Grier v. Kennan, 64 F.2d 605, 607 (8th Cir. 1933) (quoting United States v. Kirby, 74 U.S. 482, 483 (1868)).